# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-1449V**

| | |
|---|---|
| JUDITH WERTIN,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 1, 2026 |

*Richard Gage, Richard Gage P.C., Cheyenne, WY, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On October 5, 2022, Judith Wertin filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA") following her receipt of an influenza ("flu") vaccine on October 7, 2020. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

After review of the record and the parties' arguments, I conclude that Petitioner's shoulder pain more likely than not began within 48 hours of vaccination, and that no other

---

[1] Because this ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

condition or abnormality was present that would explain her symptoms. Petitioner has established all other requirements for a Table SIRVA. Accordingly, she is entitled to compensation.

## I. Procedural History

On April 18, 2023, this case was assigned to the SPU. ECF No. 16. Petitioner filed additional medical records thereafter. On March 1, 2024, Petitioner filed a status report stating that after an exchange of offers, settlement was not possible, and requesting that the case be placed on a litigation track. ECF No. 29. Respondent filed a Rule 4(c) Report opposing compensation on April 12, 2024. ECF No. 30 ("Rule 4(c) Report"). Respondent opposed entitlement on the grounds that Petitioner had not established that her shoulder pain began within 48 hours of vaccination, and that osteoarthritis of the shoulder would explain her symptoms. *Id.* at 8.

I set this matter on a briefing schedule to address the issues raised in Respondent's Rule 4(c) Report. ECF No. 33. Petitioner filed a memorandum in support of entitlement on November 18, 2024. ECF No. 34 ("Br."). Respondent filed a response brief on February 3, 2025. ECF No. 37 ("Opp."). Petitioner did not file a reply. The matter is now ripe for adjudication.[3]

## II. Relevant Evidence

I have reviewed all of the evidence filed to date, but will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

### A. Petitioner's Initial Post-Vaccination Left Shoulder Treatment

At the time of vaccination, Petitioner was 71 years old. Ex. 2 at 372. She had a history of asthma, hypertension, cataracts, and arthritis in both knees. *Id.* at 99, 135, 161, 210, 248, 372. In the summer of 2019, Petitioner had received bilateral knee steroid injections and had participated in physical therapy ("PT") for pain in her knees. *See id.* at 240, 248-50. Petitioner had no documented history of left shoulder pain.

On October 7, 2020, Petitioner received a flu vaccine in her left deltoid at a CVS Pharmacy. Ex. 4 at 2. On October 20, 2020, Petitioner had a video appointment for a

[3] On August 13, 2026, I ordered the parties to file a joint status report regarding their amenability to an expedited entitlement hearing (to be held in mid-September). ECF No. 39. But they could not agree upon the proposed date, and it was determined instead to resolve entitlement via written ruling.

routine examination with her primary care physician ("PCP") Dr. Sumandeep Kaur. *Id.* at 372. Dr. Kaur recorded that Petitioner "feels well" and was taking her medication regularly. *Id.* Dr. Kaur did not note any new issues and it appears that there was no discussion of any left shoulder pain. *See id.* at 372-75.

On November 14, 2020, Petitioner messaged Dr. Kaur as follows:

> Hello Doctor, I have been having considerable pain in my arm that I was given my flu shot. I had the shot at CVS in Fort Bragg on October 7th. At the time of the shot, it seemed to hurt much more than ever before after having one. I realized it had been given to me much higher on the shoulder than before. I kept thinking it would be better soon, but it's been over one month now and it's not getting better. Reading online about it, it said I could have nerve damage, and might need an ultrasound. I imagine I will also need a Covid test before any tests are done. Please advise. Thank you.

Ex. 4 at 378. Dr. Kaur responded the next day, informing Petitioner that she should make an appointment to be seen and examined. *See id.* Later that evening, Petitioner called the Kaiser Permanente nurse advice phone line. *Id.* at 384. Petitioner told the on-call nurse that her flu vaccine was "given high in the shoulder and has been continuously hurting since 10/7/20 . . . ." *Id.* Petitioner was unable to be scheduled for an in-person appointment with Dr. Kaur in the near future, but was given a telephonic appointment with a different physician, Dr. Kamari Beck Holder, for November 16, 2020.[4] *Id.* at 389.

At the November 16, 2020 appointment, Petitioner complained of "continued pain [in] left shoulder after receiving flu shot." Ex. 4 at 393. Petitioner had tried Tylenol and topical treatments, but the pain had not gone away. *Id.* Petitioner also stated that it "[h]urts in her shoulder and radiates towards elbow," but was not the elbow. *See id.* at 394. Dr. Beck Holder's first assessment was that the "recent injection may have triggered shoulder bursitis or impingement syndrome." *See id.* However, Dr. Beck Holder also discussed with Petitioner her history of osteoarthritis and that she "may have underlying shoulder osteoarthritis." *Id.* Dr. Beck Holder provided Petitioner with a link to online PT classes aimed at gentle stretching of the shoulder. *Id.* at 394, 404. Petitioner was advised to return

[4] On the morning of November 16, 2020, before her appointment with Dr. Beck, Petitioner messaged Dr. Kaur and asked if she had heard of SIRVA, and if it could be what she was experiencing. Ex. 2 at 399. Dr. Kaur responded by referring Petitioner to Dr. Beck Holder, but also stated that physical therapy ("PT") helped with SIRVA. *Id.*

if the symptoms worsened to receive a PT referral and referral to physical medicine and rehabilitation ("PMR") or orthopedics.[5] *Id.* at 394.

On November 30, 2020, Petitioner messaged Dr. Beck Holder that she was still having pain and weakness in her left arm. Ex. 4 at 410. Petitioner complained that the pain had "increased from high on my shoulder to my hand." *Id.* Petitioner also requested a CT scan to "diagnose any nerve, tendons, or muscle damage" and a referral to a neurologist. *Id.* Dr. Kaur responded again that Petitioner should come in person to be examined before they would make a decision about further imagine or specialists. *Id.* Petitioner scheduled an appointment for December 11, 2020. *Id.* at 416. However, Petitioner cancelled the appointment because she lived approximately two and a half hours from Dr. Kaur's office and was concerned about the danger of driving during a heavy rain storm predicted for that day. *See id.* Dr. Kaur instructed Petitioner to continue her shoulder exercises. *Id.*

**B. Left Shoulder Treatment Through September 2021**

After cancelling the December 11, 2020 appointment, Petitioner did not seek treatment for left shoulder pain for over four months. On April 5, 2021, Petitioner saw Dr. Kaur at an in-person appointment. *Id.* at 475. Petitioner again stated that she had left shoulder pain "since" the October 2020 vaccination. *Id.* Petitioner had been performing the online PT and had seen improvement, but still had pain when sleeping on her left side or when reaching. *Id.* Dr. Kaur took x-rays, which revealed "[m]ild acromioclavicular and glenohumeral joint hypertrophic changes." *Id.* at 588. Dr. Kaur characterized this finding as "mild arthritis." *Id.* at 502. At Petitioner's request, Dr. Kaur also ordered an MRI. *Id.* at 475, 477. Petitioner was referred to formal PT. *Id.* at 477.

On April 6, 2021, Petitioner had a video PT evaluation. *Id.* at 493. The physical therapist listed the referring diagnosis as "[s]houlder impingement/[rotator cuff] [t]endinitis." *Id.* With regard to onset, Petitioner stated that she received a flu vaccine on October 7, 2020, and "got shoulder pain." *Id.* at 494. She reported pain in her left shoulder down to her elbow. *Id.*

During the same time period, Petitioner underwent an MRI on May 6, 2021. *Id.* at 538. The findings were an "[i]ntrasubstance tear of the supraspinatus tendon, extending from the musculotendinous junction into the supraspinatus muscle, with adjacent muscle edema," a deficient appearance of the anterosuperior labrum with "somewhat prominent

[5] After the appointment, Dr. Beck Holder sent a message to Dr. Kaur reiterating, "FYI, sounds like her recent flu shot triggered shoulder inflammation and pain and I recommend she treat it like a shoulder bursitis or impingement with ice, rest and [PT] exercises and to follow-up with you if it is not improving or worsening." *Id.* at 395.

middle glenohumeral ligament," interpreted as a possible Blueford complex versus prior anterior labral tear, and "[m]oderate AC joint degenerative change with edema on either side of the joint." *Id.* In a message on May 9, 2021, Dr. Kaur informed Petitioner that the MRI "suggested [a] tear in one of the rotator cuff muscles and the shoulder lining." *Id.* at 542. Dr. Kaur recommended that Petitioner see a PMR specialist and an orthopedic surgeon. *Id.*

Petitioner had three further video PT sessions on April 22, 2021, May 20, 2021 and July 15, 2021. *Id.* at 518, 650, 682. Petitioner was discharged on July 15, 2021, because she had relocated and had not made progress. *Id.* at 683. The physical therapist also noted that Petitioner would benefit from being able to have in-person appointments in her new location. *Id.* On September 7, 2021, Petitioner messaged Dr. Kaur requesting a new referral to PT. *Id.* at 758. However, Dr. Kaur was unable to assist because Petitioner needed to establish a new PCP after relocating. *Id.*

Petitioner did not file any further medical records.

### C. Petitioner's Testimonial Statements

On November 28, 2022, Petitioner filed an affidavit to support her claim. Ex. 3 at 1. This affidavit stated briefly that Petitioner's left shoulder "began to hurt at the time the October 7, 2020 vaccination was given." *Id.* On January 19, 2024, Petitioner filed a sworn declaration, which did not provide any additional information relevant to onset. Ex. 5 at 1.

On November 18, 2024, Petitioner filed a second sworn declaration with further explanation of the October 19, 2020 routine examination with Dr. Kaur. Petitioner stated that she "knew [her] pain was from the vaccination, so [she] assumed that the pain would go away after awhile," but it did not. Ex. 8 at 1. Petitioner acknowledged that she did not mention "that the flu shot hurt" to Dr. Kaur, but explained that "[a]t that time, [she] was still thinking that the pain would just go away." *Id.* As to Dr. Kaur's note that Petitioner felt well at this appointment, Petitioner stated that Dr. Kaur asked if she was sick, which Petitioner understood to be a question about COVID-19. *Id.*

## Analysis

### A. Applicable Legal Standards

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A petitioner may prevail on his claim if he has "sustained, or endured the significant

aggravation of any illness, disability, injury, or condition" set forth in the Table. Section 11(c)(1)(C)(i). If a petitioner establishes a Table injury, causation is presumed.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. *Id.* at 13(b)(1). Further, a special master may find that "the first symptom or manifestation of onset . . . described in a petition occurred within the time period described in the [Table] even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." *Id.* at 13(b)(2).

"Medical records, in general, warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). Such records "contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions" and are "generally contemporaneous to the medical events." *Id.* Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Human Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005).

However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Id.* at *19. And the Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Human Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Human Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Human Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993). The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Human Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Vaccine Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section

14(a). A Table SIRVA claim requires proof of onset of shoulder pain within 48 hours of vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B), (c)(10)(ii). The criteria establishing a SIRVA under the accompanying qualifications and aids to interpretation ("QAI") are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Petitioner Has Established by Preponderant Evidence the Onset of Left Shoulder Pain Within 48 Hours Post-Vaccination

The first entitlement issue for a Table SIRVA that Respondent disputes is whether Petitioner's left shoulder pain began within 48 hours of her October 7, 2020 vaccination. Respondent relies solely on the fact of Petitioner's intervening appointment on October

20, 2020, and argues that this was a "comprehensive visit during which it is reasonable to assume that if [P]etitioner had shoulder pain, it would have been discussed." Rule 4(c) Report at 7; Opp. at 8. In response, Petitioner cites generally to statements made to her treaters linking the vaccination with the onset of her pain. *See* Br. at 2-4.

Respondent's argument fails to give sufficient weight to Petitioner's November 14, 2020 message to Dr. Kaur. Petitioner clearly stated at that time that she had been experiencing ongoing "considerable pain" in the situs of vaccination, and that this vaccination "hurt much more than ever before after having one." *See* Ex. 2 at 378. Petitioner provided the reasonable explanation, common in many SIRVA cases, that she had believed the pain would resolve, but it was now over a month later and she was concerned about nerve damage. *Id.* This treater message strongly supports a 48-hour onset.

Respondent does not correctly characterize the record by implying that Petitioner did not mention a belief that her pain would resolve until filing the November 18, 2024 declaration. *See* Opp. at 9. The November 14, 2020 message is a detailed and contemporaneous explanation for Petitioner's failure to bring up her left shoulder pain at the earlier routine appointment. Contrary to Respondent's claim, this is not also case in which a claimant's declaration contradicts the medical records or where a petitioner urges a finding in her favor based on her testimony alone. *Id.* Here, Petitioner's declaration statement is substantially similar to what she wrote to Dr. Kaur only about a month after vaccination.

Petitioner's medical records also do not undermine the conclusion that she experienced immediate pain or pain within 48 hours. Respondent ignores Petitioner's reports, specifically to Dr. Beck Holder and to the physical therapist, that the onset of her pain was concurrent with the October 7, 2020 vaccination. *See* Ex. 4 at 393, 494. None of Petitioner's records even suggest an alternative timeline or cause of her left shoulder pain. Therefore, Petitioner has established, by preponderant evidence, that onset occurred within 48 hours of vaccination.

### C. Petitioner Has Established by Preponderant Evidence that No Other Condition or Abnormality Would Explain Her Symptoms

The fourth Table QAI asks whether there is a condition or abnormality present that would explain Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(iv). Respondent argues that Petitioner's arthritis meets this definition. Rule 4(c) Report at 8; Opp. at 10. Respondent points to Dr. Beck Holder's assessment that Petitioner "has a history of osteoarthritis" and "may have underlying shoulder arthritis," as well as Dr. Kaur's

purported opinion that "[P]etitioner's shoulder x-ray indicated arthritis." *See id.* Petitioner's brief does not discuss this QAI element.

Despite Petitioner's lack of response, Respondent takes the above medical records out of context. I give greater weight to Dr. Beck Holder's assessment that Petitioner's recent vaccination "may have triggered shoulder bursitis or impingement syndrome," especially as that was the finding she chose to convey privately to Dr. Kaur after the November 16, 2020 appointment. *See* Ex. 2 at 394-95. Petitioner's history of arthritis was limited to her knees, and thus I do not read Dr. Beck Holder's comment as being intended as an explanation for Petitioner's symptoms, but instead to state a possible avenue of investigation. Similarly, Dr. Kaur messaged Petitioner on April 6, 2021, that her x-ray showed mild arthritis, but this record does not convey the level of conclusion or opinion as to the cause of Petitioner's symptoms that Respondent attempts to place on it. *See* Ex. 2 at 502.

I find sufficient support in the record that arthritis does not explain Petitioner's symptoms. Petitioner may have an underlying condition contributing to her pain, which could affect damages, but here it does not defeat entitlement.

## Conclusion and Scheduling Order

Respondent does not raise any other objections to entitlement. *See generally* Rule 4(c) Report. Based on my independent review, I find that Petitioner has preponderantly established all requirements for a Table SIRVA claim. 42 C.F.R. § 100.3(c)(10). Accordingly, she need not prove causation-in-fact. Section 11(c)(1)(C). I also find that Petitioner has satisfied all other statutory requirements. Section 11(c)(A), (B), and (D).

For the foregoing reasons, **I find that Petitioner has established entitlement and is thus entitled to compensation for a left-sided Table SIRVA following her October 7, 2020 flu vaccine administration.**

The case is now formally in the damages phase. The parties are encouraged to pursue informal resolution of an appropriate damages award. If the parties determine that informal resolution is not possible, they should be prepared to promptly brief the appropriate award of damages.

**By no later than Friday, October 30, 2026, Petitioner shall file a Status Report updating me on the parties' efforts towards informally resolving damages.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master